IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VICTOR MORENO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-20 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal are Plaintiff's Motion for Summary Judgment (Document No. 20), and Defendant's Cross-Motion for Summary Judgment (Document No. 12). Having considered the motions, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

**I.      Introduction**

Plaintiff Victor Moreno ("Moreno") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405 (g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his

1

application for Supplemental Security Income. Moreno argues that the Administrative Law Judge's ("ALJ") decision is flawed because: (1) the ALJ erred in his assessment of Moreno's credibility; (2) the ALJ did not properly develop the record with regard to Moreno's mental impairment; (3) the ALJ did not properly evaluate the Residual Function Capacity ("RFC") from Moreno's treating physician, Dr. John Stroehlein; (4) the ALJ erred in his RFC assessment and failing to make a finding as to whether Moreno can maintain employment; and (5) the ALJ erred in his finding that Moreno retains the ability to perform his past relevant work as a bottling company supervisor. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision and that the decision comports with applicable law. Namely, the Commissioner asserts that the ALJ properly assessed Moreno's credibility; the ALJ properly developed the record; the ALJ properly evaluated Dr. Stroehlein's medical source statement; the ALJ properly assessed Moreno's RFC and determined Moreno could maintain employment; and the ALJ properly concluded that Moreno could perform his past relevant work as a bottling company supervisor.

## II.    Administrative Proceedings

On October 30, 2003, Moreno applied for Supplemental Security Income, claiming an inability to work since July 30, 2003, as a result of chronic diarrhea. (Tr. 70-87, 88). The Social Security Administration denied his application at the initial and reconsideration stages. After that, Morneo requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Earl Crump, held a hearing on July 22, 2005. (Tr. 371-424). On October 28, 2005, the ALJ issued a decision finding Moreno not disabled. (Tr. 23-28).

Moreno sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are

present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Moreno's contentions in light of the applicable regulations and evidence, the Appeals Council, on December 8, 2006, concluded that there was no basis upon which to grant Moreno's request for review. (Tr. 5-7). The ALJ's findings and decision thus became final.

Moreno filed a timely appeal of the ALJ's decision. The parties have filed cross motions for summary judgment. (Document Nos. 12 & 20). This appeal is now ripe for ruling.

### III.     Standard of Review of Agency Decision

The court's review of a denial of supplemental security income is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the

evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co., v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.     Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age,

>  education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to decide disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Legget*, 67 F.3d at 564.

Here, the ALJ determined that Moreno was not disabled at step four. In particular, the ALJ determined that Moreno was not presently working (step one); that Moreno's severe chronic diarrhea and status-post gastric bypass were severe impairments (step two); that these conditions, when considered both singly and in combination, did not meet or equal an impairment listed in Appendix 1 of the regulations (step three); and that Moreno's impairments did not preclude him from doing his past work as a bottling company supervisor (step four). In this appeal, the Court must determine whether substantial evidence supports that step four finding, and whether the ALJ used the correct legal standards in arriving at that conclusion, including whether the ALJ's assessment of Moreno's credibility was proper, whether the ALJ properly developed the record with regard to Moreno's mental impairment, whether the ALJ properly evaluated Dr. John Stroehlein's medical source statement, whether the ALJ's properely considered Moreno's RFC and his ability to maintain employment, and whether the ALJ properly concluded that Moreno could perform his past relevant work as a bottling company supervisor.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

V.     Discussion

   A. Objective Medical Facts

The objective medical evidence shows that Moreno suffers from severe chronic diarrhea and status-post gastric bypass.

Moreno, suffering from morbid obesity, underwent a gastric bypass, Roux-en-Y, on March 22, 2002. (Tr. 275). Following the surgery Moreno lost 167 pounds. Prior to the procedure, Moreno experienced two to three bowel movements a day. Immediately following the procedure, the frequency of bowel movements increased but eventually leveled off to three to four a day. Beginning in August 2003, Moreno's bowel habits changed. Moreno developed more frequent bowel movements associated with rectal urgency.

On August 27, 2003, Dr. Adam Naaman performed a sigmoidoscopy and an anal fistulotomy to repair an anal fistula. (Tr. 248). The diarrhea persisted after the anal fistulotomy. Moreno was referred to Dr. Ira Klein, a specialist in gastroenterology, for the chronic diarrhea. On September 8, 2003, Dr. Klein performed a colonoscopy on Moreno and the results were negative. (Tr. 196). On September 10, 2003, Dr. Klein performed a small bowel series on Moreno and the results were also negative. (Tr. 192-95). Dr. Klein prescribed a number of drugs that did not alleviate Moreno's condition. (Tr. 202). However, a prescription of Deodorized Tincture of Opium (DTO) did improve Moreno's diarrhea temporarily. This reduced Moreno's number of bowel movements from 20 to 25 times per day to 4 to 5 times a day. (Tr. 186).

Moreno was referred to Dr. John Stroehlein at the Gastrointestinal Center at M.D. Anderson Hospital. Moreno reported eight to nine bowel movements per day. (Tr. 319). Dr. Stroehlein performed a flexible sigmoidoscopy with biopsy, on December 23, 2003. (Tr. 315). The biopsy

results of Moreno's left colon showed colonic muscosa with low-grade, focally active inflammatory disease, the type indeterminate with focal cryptitis. The biopsy results of Moreno's rectum showed a fragment of a flat tubular adenoma. (Tr. 316). Since the diarrhea persisted, the antibiotic doxycycline was prescribed. (Tr. 313) On a January 23, 2004, follow up with Dr. Stroehlein Moreno reported difficulty with depression. (Tr. 312). As a result, Dr. Stroehlein prescribed Lexapro to reduce Moreno's anxiety. Moreno's use of Lexapro made the diarrhea worse and use of the drug was ceased. After ceasing to use Lexapro, Moreno's bowel movements returned to their previous pattern.

On February 27, 2004, Moreno, on a visit to Dr. Stroehlein, continued to complain of diarrhea. Dr. Stroehlein prescribed budesonide to treat some low grade inflammation within the left colon of Moreno. (Tr. 309). On March 15, 2004, Moreno reported to Dr. Stroehlein that the budesonide reduced the frequency of his diarrhea from 8 to 10 stools a day to 4 to 6 stools a day, occasionally even 3 times a day. (Tr. 308).

After Moreno reported the persistence of the diarrhea, Dr. Stroehlein suggested Moreno consult Dr. Alexander Dekovich for a second opinion. Dr. Dekovich suggested two factors contributing to the diarrhea. The main contributing factor is the intestinal bypass with likely a blind-loop syndrome. The other factor is an alteration in the level of Moreno's anxiety and tolerance for stress. (Tr. 346). Dr. Stroehlein ruled out the blind-loop syndrome. (Tr. 342).

In a follow-up visit to Dr. Stroehlein on August, 19, 2004, Moreno reported a recurrence of urgency and diarrhea after trying to taper off his medication. Dr. Stroehlein treated Moreno for depression with an antidepressant. (Tr. 342). On March, 24, 2005, Moreno reported to Dr. Stroehlein that he had good days at least twice a week. (Tr. 336). He also reported that the urgency

has improved and the degree of diarrhea seemed less. Although, Dr. Stroehlein found the basis for the chronic diarrhea unclear; he stated Moreno experienced "significant symptomatic improvement."

On April 5, 2005, Dr. Stroehlein performed a flexible sigmoidoscopy obtaining multiple biopsies from Moreno's colon and rectum. (Tr. 334). Biopsies of the colon revealed a small hyperplastic polyp while the adjacent mucosa lacked any evidence of chronic colitis. (Tr. 332). Biopsies of the rectum revealed a small hyperplastic polyp and a small benign lymphoid aggregate while the adjacent mucosa lacked any evidence of chronic colitis. *Id*.

Having examined the objective medical evidence in the record, it is clear that Moreno suffers from chronic diarrhea and status-post gastric bypass. The ALJ found both conditions to be severe and that finding is not challenged on this appeal. However, none of the objective medical facts are sufficient to establish that Moreno is disabled as defined by the Act. Therefore, the objective medical evidence factor supports the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources,

"'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

There are several expert medical opinions on the record, including the opinions of Moreno's treating physician, the opinions of medical experts who reviewed Moreno's medical records, and the opinions of physicians who consultatively examined Moreno. The ALJ, in his October 28, 2005, decision, relied exclusively on the opinions of Dr. Stroehlein, Moreno's treating gastroenterologist, and Dr. Laing, a medical expert who reviewed Moreno's medical records. Dr. Stroehlein, in the written RFC assessment he completed in July 2005, opined, from his review of Moreno's medical records through that date, that Moreno could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about four hours in an eight-hour day, and sit for about six hours in an eight-hour day. (Tr. 353-356). In addition, Moreno suffers from chronic diarrhea with resulting fatigue, requiring approximately six unscheduled restroom breaks per day, and incontinence at least four times a month. *Id.* Dr. Stroehlein further noted Moreno suffered from depression that contributed to his chronic diarrhea. *Id.* Thus, Moreno, although capable of low stress jobs, required work with a high level of flexibility. *Id.* Dr. Laing in his testimony found that Moreno suffers from chronic diarrhea due to his gastric bypass surgery and emotional factors. (Tr. 411). Dr. Laing also testified that Moreno could perform light work, but he needed to have a "restroom that he can get to quickly." (Tr. 414-15).

The ALJ, in his written decision, found that Moreno had chronic diarrhea and status-post gastric bypass, and that those impairments were severe. The ALJ also found that none of Moreno's impairments, either singly or in combination, met or equaled a listing. Then, the ALJ determined that Moreno had the following "residual functional capacity: stand and walk six hours of an eight-

hour workday; sit two hours of an eight-hour workday; lift and carry 10 pounds frequently; lift and carry 20 pounds occasionally; and ability to access a bathroom at least four times a day." (Tr. 26).

Moreno argues that the ALJ failed to consider the opinion of the examining gastroenterologist, Dr. Stroehlein and failed to properly develop the record with regard to plaintiff's mental impairment. The Commissioner, in contrast, argues that the ALJ did properly consider Dr. Stroehlein's opinion and substantial evidence supports the ALJ's RFC. In addition, the Commissioner argues that the ALJ fully and fairly developed the record as to Moreno's mental impairment.

The ALJ's statement barely references Dr. Stroehlein's RFC assessment. This single sentence represents the only reference to that assessment, "On July 28, 2005, Dr. Stroehlein determined that the claimant was capable of working a low stress job." (Tr. 25). Besides no mention of the other limitations discussed in Dr. Stroehlein's assessment, the ALJ failed to include the one limitation mentioned in the report, the need for low stress work. Dr. Stroehlein has treated Moreno for his chronic diarrhea since December 2003, on a continuous basis. (Tr. 353). As recognized by Dr. Laing, Dr. Stroehlein is "a very esteemed doctor," and a professor of medicine in the Department of Medicine and Nutrition at the M.D. Anderson Hospital. As Moreno's treating physician, Dr. Stroehlein's opinion is entitled to considerable weight. Regulations require the ALJ to "give good reasons in [his decision] for the weight [he] gives [to a claimant's] treating source's opinion." 20 C.F.R. § 416.927(d)(2). The Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) clearly states:

> [A]bsent reliable medical evidence from a treating or examining physician

> controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

At the very least the ALJ erred in two respects: (1) failing to consider Dr. Stroehlein's complete opinion and (2) failing to explain his reasoning for rejecting the one finding he acknowledged by Dr. Stroehlein. The ALJ's errors prevent the ALJ from forming a complete RFC assessment of Moreno.

As to the claim that the ALJ failed to develop the record as to Moreno's mental impairment, an ALJ is obligated to determine the extent to which the mental impairment may account for the claimant's subjective complaints. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). However, the Social Security Administration can "consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 416.912(a).

The record contains an abundance of evidence to indicate Moreno may suffer from mental impairment which exacerbates the symptoms of his chronic diarrhea. First, Moreno reported that the diarrhea made him depressed, anxious, and angry in his daily activity questionnaire. (Tr. 100). Second, numerous reference in the medical records indicate a potential mental impairment. For example in December of 2003, Dr. Stroehlein suggested anxiety or stress may contribute to Moreno's chronic diarrhea. (Tr. 213). In the same month, Moreno admitted to having a "tendency to depression and anxiety." (Tr. 319). Once again, in January 2004, Dr. Stroehlein noted Moreno was "having some difficulty with depression." (Tr. 312). In February 2004, Dr. Stroehlein again contemplated whether Moreno's mental state perpetuated his diarrhea. (Tr. 310). Moreno received

a prescription of Lexapro for his mental condition, but use of the medication ceased since it worsened the diarrhea. (Tr. 310). Dr. Alexander Dekovich, upon consulting with Moreno in May 2004, reported Moreno suffered from increased irritability and nervousness and that the diarrhea may result from an "alteration in the level of anxiety and tolerance for stress." (Tr. 345-46). In June 2004, Dr. Sroehlein concluded anxiety and stress acted as a "significant contributing factor" in Moreno's diarrhea. (Tr. 242). In Dr. Stroehlein's RFC assessment of Moreno, he limited Moreno to only low stress jobs, because the "combination of stress per se and stress induced by gastrointestinal symptoms amplify each other." (Tr. 354). In addition to Dr. Stroehlein's assessment, Dr. Laing agreed that emotional factors played a role in Moreno's diarrhea. (Tr. 141).

The ALJ failed to discuss or consider any of the above evidence of Moreno having a possible mental impairment that perpetuates his chronic diarrhea. Also, the ALJ failed to develop the record completely as to Moreno's mental impairment and to obtain a psychiatric consultation and mental RFC assessment, given the prevalence with which Moreno's mental state is tied to his condition throughout the record. An ALJ is required to "develop the facts fully and fairly relating to an applicant's claim for disability benefits. . . . If the ALJ does not satisfy his duty, his decision is not substantially justified." *Newton*, 209 F.3d at 458. In this case, the ALJ's failure to properly consider and develop the record as to Moreno's mental state prejudices the Plaintiff.

Due to the ALJ's failure to consider Dr. Stroehlein's RFC assessment and to develop the record properly as to Moreno's mental state, the diagnosis and expert medical opinion factor does not support the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's

testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment, which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment,'" *Sellers*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Moreno testified at his hearing before the ALJ. Moreno stated that he uses the restroom 10 to 12 times a day due to his diarrhea and sometimes up to three times an hour. (Tr. 382). In addition, Moreno experiences trouble sleeping at night, because he must wake up to use the bathroom four to five times a night. (Tr. 383). Moreno also testified to experiencing fatigue due to the diarrhea. (Tr. 391-92). In addition, Moreno sometimes soils his pants up to three times a day. (Tr. 392).

The ALJ found that Moreno's testimony was "not totally credible." (Tr. 27). In doing so,

the ALJ wrote:

> John Stroehlein, M.D., the claimant's treating physician, found results of a colonoscopy to be negative, small bowel series to be negative and a flexible sigmoidoscopy to be normal. By March 24, 2005, Dr. Stroehlein found the claimant to admit that the urgency he previously experienced had markedly improved and that the degree of diarrhea seemed to be less, even to the point of, some days, he may skip his medication or not need to take the full does of medication or not need to take the full does of medication prescribed for this condition. On July 28, 2005, Dr. Stroehlein determined that the claimant was capable of working a low stress job.
>
> The medical expert, Dr. Laing, testified that the medical records do not support the claimant's testimony. The medical records show various reactions to treatment, although, on March 24, 2005, the claimant admitted that the urgency he previously experienced had improved and the degree of diarrhea seemed to be less, as well as, on May 4, 2004, he was found to have three to four bowel movements a day. However, he testified that had to stay close to the restroom because of needing it 10 to 12 times a day, not all producing bowel movements. Dr. Laing opined that the claimant was capable of standing and walking six hours of an eight-hour workday, no limitation on sitting and he would need a restroom to get to quickly.

(Tr. 25).

These two paragraphs represent the only possible evidence regarding Moreno's credibility in the ALJ's decision. The evidence from Moreno's visit to Dr. Stroehlein on March 24, 2005, supports the ALJ's finding that previously Moreno experienced some improvement in his diarrhea. (Tr. 336). However, the ALJ failed to take into account the rest of the record from Moreno's visit to Dr. Stroehlein on March 24, 2005. Moreno in his testimony never denied that his condition sometimes temporarily improves, but that the diarrhea comes back. (Tr. 396). Even with improvement as reported on March 24, 2005, Moreno only experiences good days two out of the seven days. (Tr. 336). Thus, most of time Moreno's diarrhea occurs at a much higher frequency than the lowest number reported in the medical files, three times a day. The medical expert, Dr. Laing, could not make a determination about the frequency of stools, other than calling it "variable."

(Tr. 411). In addition, the ALJ erred as to the facts in his decision. The ALJ's decision states that on May 4, 2004, Moreno experienced four bowel movements a day. (Tr. 25). Upon closer examination, the medical files indicate on May 4, 2004, Moreno experienced eight to ten bowel movements a day. (Tr. 344).

The Fifth Circuit states an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). In addition, an ALJ's credibility finding must be properly supported.

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision, It is not sufficient to make a conclusory statement that the individual's allegations have been considered or that the allegations are (or are not) credible. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Soc. Sec. Rul. 96-7p. The ALJ found Moreno's claim lacked credibility. That credibility determination not only errs in stating the record, but lacks support within the record as to the frequency of Moreno's bowel movements and the resulting fatigue experienced. Without properly considering Moreno's testimony, the ALJ cannot determine whether Moreno was disabled. Thus, the subjective evidence of pain factor does not support the ALJ's decision.

### D. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental

16

impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

As of the date of the last administrative hearing, Moreno was 51 years old, had a GED education, and had past work experience as both an appliance manager and a bottling company supervisor. (Tr. 378-381). Based on his determination of Moreno's residual functional capacity, the ALJ posed a hypothetical to a vocational expert ("VE") about Moreno's ability to engage in his past work and other work:

> ALJ: [A]ssume a person limited exertionally to the performance of no more than light work. Further assume that I would find that this person would require a work station with ready access to the bathroom and would need to visit the bathroom unscheduled times for periods of at least four times a day. Assuming all of those limitations but not others, could a person so limited perform any of M[r]. Moreno's past relevant work, either as actually performed by him or as normally performed in the national and local economie?
>
> VE: Yes, Your Honor. I believe a person with this hypothetical could perform the supervisor in the bottling company, and I would exclude the manager in the appliance industry because that was at the medium exertion level.
>
> ALJ: Let me ask you to continue to assume a person with a limited exertionally to the light exertional level. Continue to assume that I would find that this person would require a work station with ready access to a bathroom. Let me ask you to assume that would find that this person would need to be able to take unscheduled breaks occurring 10 to 12 times a day. Assuming those limitations but no others, could a person so limited perform Mr. Moreno's past relevant work, either as performed or as normally performed?
>
> VE: I do not believe so, Your Honor. Even though he was a supervisor, I believe taking unscheduled breaks up to 10 to 12 times a day, it would render this person, even a supervisor, unable to maintain employment, Your Honor.
>
> ALJ: Do you know of any other jobs then in the national or local economies that could be performed by someone of Mr. Moreno's age, education, and vocational background who was so limited?

>VE: I do not, Your Honor.
>
>ALJ: And, Ms. Swisher, you have been present during Mr. Moreno's testimony. You have heard his testimony concerning his problems with chronic uncontrollable and unpredictable diarrhea. If I find the testimony fully true and credible and find that he does experience the limitations indicated by this testimony, under those circumstances, do you know of work in the national or local economies that could be performed by someone of his age, education, and vocational background who was so limited?
>
>VE: I do not, Your Honor. I believe the testimony heard would just render this individual unable to maintain employment without accommodation, which is not consistent with SGA.

(Tr. 419-21).

If the ALJ had found Moreno credible, according to the testimony of the VE, Moreno could not find work considering his age, education, and vocational background. The ALJ's failure to acknowledge Dr. Stroehlein's opinion regarding Moreno's limitations, along with the ALJ erring in determining Moreno's credibility, both prejudice the ALJ's determination whether Moreno can engage in his past relevant work as a bottling company supervisor. Thus, the education, work history and age factor does not support the ALJ's decision.

## VI.  Conclusion and Order

Based on the foregoing and the conclusion that the ALJ erred for the following reasons: failing to consider the treating physician's opinion as to Moreno's limitations; failing to develop the record properly as to Moreno's mental impairment; failing to determine Moreno's credibility properly; and finally, erring in determining whether Moreno could engage in his past relevant work as a bottling company supervisor, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 20) is GRANTED,

that Defendant's Motion for Summary Judgment (Document No. 12) is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings, including, if appropriate, an evaluation of Moreno's mental impairment and further consideration of both Dr. Stroehlein's opinion and Moreno's subjective complaints.

Signed at Houston, Texas, this 24th day of July, 2007.

Frances H. Stacy
United States Magistrate Judge